### CITTY v. MILLER.

Court En Banc. May 28, 1925.

No petition for Certiorari was filed.

1. **Appeal and error. Assignment that court erred in not directing a verdict and assignment that there is no evidence to support verdict raise substantially the same question.**

   If there was sufficient evidence in support of the cause of action stated in the declaration to require submission of the case to the jury, there is necessarily some evidence to support the verdict of the jury.

2. **Malicious prosecution. Verdict for defendant can only be directed where undisputed evidence shows investigation of facts by defendant.**

   In an action for malicious prosecution the verdict should be directed for defendant only when it appears from undisputed evidence, that, before procuring the arrest and prosecution of plaintiff, the defendant endeavored, by the exercise of reasonable diligence, to make such inquiry and investigation of the facts touching the probable guilt of the plaintiff as an ordinarily prudent person would have made under the same circumstances.

3. **Malicious prosecution. Probable cause is mixed question of law and fact.**

   The question of probable cause is a mixed question of law and fact.

4. **Malicious prosecution. Trial. Credibility of witnesses and weight of evidence is for the jury.**

   In a suit for malicious prosecution the credibility of the witnesses and the weight of the evidence are matters for the jury to determine.

5. **Appeal and error. On appeal evidence is construed in favor of verdict.**

   Appellate Court will take view of the evidence most favorable to the party successful below, and discard all countervailing evidence.

6. **Malicious prosecution. Whether defendant consulted counsel or not is for jury.**

   In view of conflicting testimony the question of whether defendant consulted counsel before instituting action for malicious prosecution, held question for the jury.

1

7. **Malicious prosecution. Probable cause is not a defense where proper investigation is not made.**

When the facts are easily obtainable, a failure to make an inquiry before instituting a criminal prosecution constitutes a want of probable cause, and the failure of a person who has received information tending to show the commission of a crime to make such further inquiry or investigation as an ordinarily prudent man would have made under the same circumstances, before instituting a prosecution, renders him liable for proceeding without probable cause.

8. **Malicious prosecution. Probable cause is a question for the jury.**

How an "ordinarily prudent man" would act under a given set of circumstances is a question for the jury to determine from their knowledge of mankind and how persons of reasonable prudence usually deport themselves.

9. **Malicious prosecution. Evidence held sufficient to take case to the jury.**

Where evidence showed the defendant had a chance to investigate and learn whether plaintiff was at a place other than where car was stolen, held to make a question of probable cause for the jury.

10. **Appeal and error. Malicious prosecution. Verdict of jury will not be disturbed unless so great as to shock judicial conscience.**

The assessment of plaintiff's damages is a matter which the law has committed primarily to the jury, and, unless the amount of the verdict is so great as to shock the judicial conscience, it will not be disturbed.

11. **Malicious prosecution. Damages. Verdict of $1300 for unfounded prosecution for stealing an automobile held not excessive.**

In an action for malicious prosecution for having maliciously prosecuted plaintiff for stealing his automobile a verdict of $1300 held not excessive.

Appeal in Error from Circuit Court, Hamilton County; Hon. Oscar Yarnell, Judge.

Affirmed.

J. H. Early, of Chattanooga, for plaintiff in error.

Cooke, Swaney & Cooke, of Chattanooga, for defendant in error.

FAW, P. J. This is an appeal in the nature of a writ of error, prosecuted by R. J. Citty, the defendant below, to reverse a judgment of the circuit court of Hamilton county for $1,300, obtained against him by Clarence J. Miller, the plaintiff below.

In this opinion we will refer to the parties as plaintiff and defendant, respectively, as they stood on the record in the circuit court.

Plaintiff sued defendant for $10,000, as damages for false and malicious prosecution.

In his declaration, the plaintiff alleged that on the 30th day of October, 1923, the defendant, without probable cause, falsely and maliciously procured one W. O. Watts, a justice of the peace for Hamilton county, to issue a state's warrant against the plaintiff on a charge of stealing defendant's Ford automobile, and, as a result thereof, plaintiff was bound over to the criminal court of Hamilton county, Tenn., and the defendant thereupon, at the December term, 1923, of said criminal court, without probable cause, falsely and maliciously procured an indictment to be returned against plaintiff

by the grand jury of Hamilton county, and charged the plaintiff with the larceny of a Ford automobile, of the value of·$400, the personal property of defendant; that on October 30, 1923, the plaintiff was arrested under said justice of the peace warrant and gave bond for his appearance at the criminal court, when he was bound over, and also gave bond for his appearance before W. O. Watts, justice of the peace, and was again arrested under a capias issued from the criminal court of Hamilton county, and gave bond for his appearance before said court, and was tried before a jury in the criminal court of Hamilton county, Tenn., on March 11 and 12, 1924, and, said jury being duly impaneled and sworn according to law, returned a verdict of not guilty as to plaintiff under said indictment on March 12, 1924.

The defendant filed a plea of not guilty, and, upon the issues thus made, the case was tried before Judge Yarnell and a jury. At the close of all the evidence, the defendant moved the court to peremptorily direct the jury to return a verdict for the defendant, but the motion was overruled, and the case was submitted to the jury. The jury found the issues in favor of the plaintiff, and assessed his damages at $1,300. The court thereupon ordered and adjudged that the plaintiff recover of defendant the sum of $1,300 and all the costs of the cause, for which execution was awarded.

The defendant moved for a new trial, but his motion was overruled, and defendant thereupon excepted to the action of the court and prayed an appeal in the nature of a writ of error to this court, which was granted by the trial court and perfected by the defendant, and in due season the defendant filed a bill of exceptions, preserving the evidence heard and the proceedings had on the trial below.

Through his assignments of error in this court, the defendant asserts (1) that the trial court erred in overruling defendant's motion for a directed verdict; (2) that there is no evidence to support the verdict: and (3) that "the verdict of the jury is so excessive as to indicate passion, prejudice, pique, and caprice."

The first and second assignments, supra, raise substantially the same question, for, if there was sufficient evidence in support of the cause of action stated in the declaration to require submission of the case to the jury, there is necessarily some evidence to support the verdict of the jury. Southern Railway Co. v. Lewis & Adcock, 139 Tenn. 37, 44, 201 S. W. 131, L. R. A. 1918C, 976; F. W. Woolworth Co. v. Connors, 142 Tenn. 678, 688, 222 S. W. 1053.

The grounds upon which defendant based his motion for a directed verdict were stated at the time the motion was made, as follows:

"First. There is no evidence in this record to support a verdict for the plaintiff.

"Second. There was probable cause as a matter of law for the institution of criminal proceedings against Clarence J. Miller on the 30th day of October, 1923, by the defendant, R. J. Citty, for the theft of his automobile.

"Third. The undisputed evidence in this cause shows that the defendant, R. J. Citty, acted upon the advice of counsel in the prosecution of Clarence J. Miller after relating all the material facts in 'good faith to said counsel, and the advice of said counsel constituted, as a matter of law, probable cause for said prosecution."

It is shown by the plaintiff's proof, and is admitted by the defendant in his testimony, that, on October 30, 1923, the defendant procured one W. O. Watts, a justice of the peace for Hamilton county, to issue a state's warrant against the plaintiff on a charge of stealing defendant's Ford automobile; that on the same day plaintiff was arrested by a deputy sheriff and locked up in the Hamilton county jail, but was released on a bond of $1,000 during the same afternoon; that on October 31, 1923, plaintiff was, by said justice of the peace, bound over to the criminal court of Hamilton county, and plaintiff gave bond to appear before said criminal court to await the action of the grand jury; that an indictment against plaintiff was returned by the grand jury of Hamilton county, charging plaintiff with the larceny of a Ford automobile of the value of $400, the personal property of the defendant; that defendant was tried under said indictment before a jury in the criminal court of Hamilton county on March 11 and 12, 1924, and was acquitted by the jury of the charge in said indictment on March 12, 1924. It also appears that defendant was prosecutor in said criminal case against plaintiff, and testified as a witness against plaintiff on said trial in the criminal court.

But it is insisted for the defendant that it appears from uncontradicted evidence that defendant procured the arrest, indictment, and trial of plaintiff upon "probable cause" and without malice, and that defendant acted in said matter upon the advice of competent counsel, honestly obtained in good faith, after making a full statement to the counsel of all the material facts within defendant's knowledge.

If, in the particulars just stated, learned counsel for defendant has correctly interpreted the record, the motion for peremptory instructions should have been sustained (Cooper v. Flemming, 114 Tenn. 40, 46, 84 S. W. 801); provided it also appears, from undisputed evidence, that, before procuring the arrest and prosecution of plaintiff, the defendant endeavored, by the exercise of reasonable diligence, to make such inquiry and investigation of the facts touching the probable guilt of the plaintiff as an ordinarily prudent per-

son would have made under the same circumstances. 5 A. L. R. p. 1688; Cooper v. Flemming, supra, page 46 (84 S. W. 801).

"The question of probable cause is a mixed question of law and fact." Cooper v. Flemming, supra, page 52, 84 S. W. 803; 18 R. C. L. p. 58.

On October 29, 1923, and for some time theretofore, plaintiff and defendant were citizens and residents of East Ridge, an incorporated community in Hamilton county, Tenn., near the city of Chattanooga. The defendant, R. J. Citty, was one of the commissioners of East Ridge. About, or shortly after, nightfall on the day last named, defendant drove from his home to a schoolhouse in East Ridge, where a meeting of the commissioners of East Ridge was to be held on that night. Defendant was driving a new Ford automobile owned by him, and he was accompanied from his home by a friend. P. R. Lomineck. Defendant parked his car inside the schoolhouse yard, near the door, and he and Lomineck entered the building. They were the first persons to arrive at the schoolhouse on that occasion. A few minutes later, defendant's car was driven out of the yard and down the road. Defendant heard the noise made by the car when it started, ran out of the schoolhouse, and followed the car down the road far enough to see which road it entered at a point where the road "forked," about a quarter of a mile from the schoolhouse. About the time defendant's car disappeared, another car, driven by Mr. Carroll, arrived, and defendant and Lomineck entered this latter car and undertook to follow defendant's car until they reached the store of Claude Smith, somewhere within the limits of East Ridge. Claude Smith was also a commissioner of East Ridge. At Smith's store defendant and Lomineck entered Smith's car, and, with Smith driving, they proceeded to the town of Ringgold, Ga., where defendant found the sheriff of the county in which Ringgold is situated, and a few minutes later defendant saw his car approaching along one of the streets of Ringgold. Defendant testified that he recognized the approaching car on that occasion as his car by the unusual angle of the lights. The car, he says, was new, and the lights had not been properly adjusted. The sheriff stationed himself in the street, with a flash light, and attempted to signal the driver of defendant's car to halt. Before reaching the sheriff, the driver of defendant's car turned the car into a cross street, whereupon Smith, in his car, with defendant beside him on the front seat, and Lomineck on the rear seat, pursued defendant's car, and, in a short distance, had almost overtaken it, when defendant's car stopped, and the driver leaped out of the car, ran across the street, passed between two houses and over a high "chicken wire" fence and disappeared in a field.

According to the testimony of defendant and Claude Smith, when the driver of defendant's car ran across the street, as above stated, he passed through the light from the lamps on Smith's car, and both defendant and Claude Smith recognized him as the plaintiff, Miller. Their testimony purports to contain a somewhat minute description of the man who leaped from the car and the manner in which he was dressed on that occasion. Defendant also testified that Smith stated to him at the time that he·recognized the fleeing man as Clarence Miller.

Under the direction of defendant, a cordon of guards was stationed around the large field in which the driver of defendant's car had disappeared, and defendant telephoned to Chattanooga for bloodhounds. The hounds came and apparently picked up and followed a trail across the field above mentioned, but lost the trail on reaching a road beyond the field, and, an hour or two after midnight, defendant and his party returned to East Ridge without finding the man who had escaped from defendant's car, and without ascertaining the direction in which he had gone.

The time at which defendant's car was intercepted at Ringgold, as above stated, is not very definitely shown by the record, but it seems to have been between 7:30 and 8:30 p. m. Shortly after defendant's car arrived and the driver fled, S. M. Hudlow, a deputy sheriff of Hamilton county and mayor of East Ridge, reached Ringgold in an automobile, having followed defendant and his party from East Ridge; but about a half hour after his arrival Hudlow returned to East Ridge, ostensibly to watch for plaintiff, Clarence Miller, and to ascertain his whereabouts. On his arrival at East Ridge, Hudlow saw a light in the home of plaintiff's brother, where plaintiff lived, but made no inquiry there or elsewhere concerning plaintiff's whereabouts, and went to his home, and retired without making any effort to learn whether or not plaintiff was at his home or elsewhere in East Ridge.

It is shown by the testimony of persons living at East Ridge that on the following morning (October 30th) defendant met these witnesses, and, in response to their questions, told them that he knew who stole his car, but defendant declined to disclose the name of the guilty party. He told one witness, Mrs. Volney Smith, in substance, that if she would watch the afternoon paper she would learn who had stolen his car.

About 9 or 10 o'clock in the morning of October 30th, defendant procured a warrant from Esquire Watts for the arrest of plaintiff and placed it in the hands of S. M. Hudlow. Hudlow carried the warrant back to East Ridge before noon, and about 1:30 o'clock in the afternoon Hudlow arrested plaintiff at Stone's store in East Ridge and took him to the county jail, but plaintiff telephoned from

the jail to some of his friends, who made bond for him in a short while, and he was released from jail during the same afternoon.

A committing trial was had before Esquire Watts on October 31st, at which defendant testified, among other things, that he recognized plaintiff as the man driving his car, both at the East Ridge schoolhouse and at Ringgold. On the trial of the present case, defendant testified that he did not recognize plaintiff as his car was driven away from the schoolhouse, but that he clearly recognized him at Ringgold as he ran away from the car.

On the advice of his counsel, plaintiff did not testify, or offer any witness, at the committing trial, and was "bound over" to await the action of the grand jury. An indictment was subsequently found against plaintiff, and he was tried and acquitted as before stated.

There is much evidence in the record tending to show that, at the time of the occurrence above related, defendant entertained very bitter feelings toward plaintiff. During an earlier month of the same year an election had been held at East Ridge to elect commissioners for the municipality. In said election, defendant and the aforementioned Claude Smith and S. M. Hudlow were candidates on the same ticket, and were declared elected on the face of the returns. Plaintiff was a partisan of the opposing ticket, and was designated and acted as a "watcher" at the polls on election day, and in that capacity he "challenged" a number of voters on the ground, among others, that the poll tax receipts of such voters had been fraudulently altered. The election was hotly contested, and the citizens of East Ridge were sharply divided into two hostile factions. It is manifest on the record that this hostile feeling between the factions at East Ridge had not subsided to any great extent at the time of the trial of the present case. Subsequent to said election, an indictment was returned by the grand jury of Hamilton county against some of the partisans and relatives of defendant and Claude Smith, charging them with fraudulent practices in said election. Plaintiff was a witness before the grand jury when said indictment was found, and it was supposed that he would be an important and material witness at the trial of said case in the criminal court. At the time plaintiff was arrested (on October 30th) for the larceny of defendant's automobile, the said election fraud case had been set for trial in the criminal court for a day early in November, following.

We do not mean to be understood as saying that all of the facts we have stated are undisputed on the record, but we find substantial evidence in the record tending to prove them. It is not our function, in a case of this kind, to find where the preponderance of the evidence lies, but merely to ascertain whether there is any material evidence to take the case to the jury, and to support the verdict of

the jury.   The credibility of the witnesses and the weight of the evidence are matters for the jury to determine; hence it is our duty to take that view of the evidence most favorable to the party successful below, and discard all countervailing evidence.

Defendant testified, in substance, that he sought and obtained advice, as to whether he had probable cause to procure plaintiff's arrest, from a reputable member of the Chattanooga bar, who had been his attorney for about 25 years, and that he stated all the facts to his attorney, and was advised by his said attorney that he had sufficient cause to institute criminal proceedings against the plaintiff for the larceny of his automobile.   This fact rests on the testimony of defendant alone, but to the extent above stated defendant's testimony is undisputed.   However, it is insisted for plaintiff that on this record it was for the jury to say whether or not defendant obtained the advice of counsel before he procured the arrest of plaintiff or afterwards.   This latter contention is based on the fact that, when plaintiff testified as the first witness in his behalf, he stated unequivocally that he consulted counsel about 1:30 o'clock in the afternoon of October 30th, which was three or four hours after the warrant was issued, as shown by the undisputed proof; but later, and after all the witnesses had testified (and there were a large number of them), defendant again took the witness stand and undertook to correct his former testimony by stating that, on reflection, he was satisfied that he had been mistaken in his former testimony as to when he talked with his attorney, and that it was early in the morning, and before he procured the warrant for plaintiff's arrest.

Taking into consideration all of defendant's testimony on this point, both direct and cross examination, in connection with the fact that there is in the record testimony of witnesses impeaching, and of other witnesses sustaining, the character of defendant for truth and veracity, it is our opinion that it was for the jury to say whether defendant consulted counsel before instituting the criminal prosecution against plaintiff.

The record shows that many people living at East Ridge and in that vicinity are in the habit of congregating in the evenings at Stone's store and Snyder's store at East Ridge.   These stores face each other on opposite sides of the Ringgold road, and are about one-quarter of a mile from the East Ridge schoolhouse, and in the direction of Ringgold from the schoolhouse, and plaintiff lived with his brother a short distance from the stores.

·   It is shown by the testimony of a number of unimpeached witnesses that plaintiff was at Stone's store on the evening of October 29th, and could not have been the person who drove defendant's car to Ringgold on that evening.   In other words, plaintiff established a complete alibi; and the evidence establishing plaintiff's alibi is

undisputed, except that it is inconsistent with the testimony of defendant and Claude Smith that they saw plaintiff at Ringgold at the time and under the circumstances before stated.

The defendant knew plaintiff well, knew where he lived, and knew his customary associations, and defendant admits that he made no inquiry or effort to ascertain whether the plaintiff was about his home or his usual places of resort at the time defendant's automobile was taken from the schoolhouse and driven to Ringgold. It cannot be doubted on this record, that, if defendant had made reasonable inquiry at East Ridge, he would have discovered an abundance of evidence that plaintiff was not absent from East Ridge.

It has been held in numerous cases, collected and digested in a note found in 5 A. L. R. pp. 1688-1695, that, when the facts are easily obtainable, a failure to make an inquiry before instituting a criminal prosecution constitutes a want of probable cause, and that the failure of a person who has received information tending to show the commission of a crime to make such further inquiry or investigation as an ordinarily prudent man would have made under the same circumstances, before instituting a prosecution, renders him liable for proceeding without probable cause.

We think the principle thus announced is sound, and that it applies to the facts of the present case. How an "ordinarily prudent man" would act under a given set of circumstances is a question for the jury to determine from their knowledge of mankind and how persons of reasonable prudence usually deport themselves. Railroad v. Wade, 127 Tenn. 154, 158, 153 S. W. 1120, Ann. Cas. 1914B, 1020.

In our opinion, the defendant's motion for a directed verdict was properly overruled, and there is evidence to support the verdict of the jury. The first and second assignments of error are therefore overruled.

We find no sufficient basis in the record for the conclusion that the verdict of the jury is so excessive as to indicate passion, prejudice, or caprice on the part of the jury. The law furnishes no exact standard by which the court can measure the damages resulting to the victim of a malicious prosecution. In such actions the assessment of plaintiff's damages is a matter which the law has committed primarily to the jury, and, unless the amount of the verdict is so great as to shock the judicial conscience, it will not be disturbed. 18 R. C. L. p. 76. The court should not attempt to substitute its own judgment as to the amount of damages for the judgment of the jury, and thereby usurp the lawful function of the jury. The third assignment of error is overruled.

It results that the judgment of the circuit court is affirmed, and judgment will be entered accordingly. The costs of the appeal will

be adjudged against the defendant, R. J. Citty, and the surety on his appeal bond.

All concur, except Clark, J., absent.