# HIRAM C. TRAVIS v. HELEN BACHERIG.

Middle Section.    March 24, 1928.

Petition for Certiorari denied by Supreme Court, July 14, 1928.

John W. Hilldrop and R. C. Boyce, of Nashville, for plaintiff in error, Travis.

Edwin A. Price, Jr., Thomas W. Schlater, and Edwin A. Price, of Nashville, for defendant in error, Miss Bacherig.

CROWNOVER, J. This was an action by Miss Bacherig against Travis for damages for false imprisonment and slander. The first count of the declaration charged that the defendant Travis and a policeman wrongfully and illegally arrested and detained Miss Bacherig on a false charge of robbing and burglarizing homes on Bell street in the City of Nashville; and the second count charged that the defendant Travis, while holding and detaining Miss Bacherig under arrest, had slandered her by falsely charging her with robbery and stealing in that he published of and concerning her to the assembled crowd the following: ''You know where you have been and what you have done. You know that you have been robbing and stealing all up and down Bell street.'' The defendant pleaded the general issue of not guilty. The jury returned a verdict for $2000 damages for Miss Bacherig. The defendant's motion for a new trial was overruled and he appealed in error, and has assigned nine errors, which are, in substance, as follows: The court erred in not setting aside the verdict and granting a new trial:

1. Because there was no material evidence to support the verdict.

2. Because the charge of the court as to defendant's liability for false imprisonment and slander, and as to the measure of damages, was erroneous, in that the court charged the jury in substance that if the defendant had unlawfully and without legal authority arrested and detained plaintiff on a false charge, or if the defendant had uttered the words set out in the declaration, which words were actionable per se, if false, he was liable. It being insisted that the charge in this respect was erroneous because the words were spoken during the investigation of crime and were qualifiedly privileged, and the defendant had a right to arrest and detain plaintiff on reasonable grounds of suspicion, as a crime had been committed, irrespective of her guilt or innocence.

3. Because the verdict was so excessive as to indicate passion, prejudice or caprice on the part of the jury.

4. On the ground of newly-discovered evidence.

5. The court should have sustained the defendant's motion for peremptory instructions on the first count of the declaration.

The facts necessary to be stated are, that some woman had been burglarizing and robbing houses on Bell street, and on the morning the incident occurred out of which this suit arose, the defendant Travis had been notified that the woman had been going into houses on Bell street and had been seen coming out of a piano box. Other parties had phoned the police headquarters, and a policeman had been detailed to look into the matter. While Travis and the policeman were conferring Miss Bacherig passed down Tenth avenue, going to her place of work. The policeman suggested that she fitted the description given at police headquarters, so Travis and the policeman called to her to wait, and they rushed up and the defendant Travis caught her by the arm, and upon her inquiry as to what they wanted with her, Travis stated, "You know what you have been doing, you have been robbing and stealing all up and down Bell street and you were robbing and stealing in my house." The plaintiff immediately insisted that they were mistaken. She gave them her name and address and where she worked, and told them that she had just gotten off of the Belmont street car in front of the union station, and that the policeman in the union station could corroborate her statement and identify her. Travis replied, "Never mind that kind of talk, that is what they all say."

Miss Bacherig then suggested that she be allowed to go down to the Cummings station, less than one block away, where she could be identified as she worked for the H. G. Hill Grocery Company. Travis refused, telling her that they were going to take her to the police station. Miss Bacherig then offered to show them a letter in her handbag, and her lunch, but they refused to pay any attention. She then took off her hat in order to be better identified, and begged them to allow her an opportunity to identify herself, which they refused to do, and Travis said, "You know you are guilty." A Mr. Frey, city salesman for Cheek & Company, came up and told the defendant that he had seen Miss Bacherig get off of the street car and inquired about the trouble. Travis informed him that Miss Bacherig had been robbing and stealing in his home on Bell street. Then Frey told him that he was mistaken and that Miss Bacherig was an honorable lady, but to no avail.

In the meantime a crowd had gathered and the defendant repeatedly told the people in the crowd that Miss Bacherig was a thief and had been robbing and stealing up and down Bell street. Finally a Mr. Drifoos, who operates a taxi stand near the scene,

stated that he knew Miss Bacherig for many years and insisted that they had the wrong woman. Miss Bacherig was crying. After an argument Mr. Travis, who had been holding Miss Bacherig's arm, said, "Well, you may go." Plaintiff stated that Travis seemed to be "wild mad" because somebody had been stealing in his house. After he had released the plaintiff's arm and she had walked off down the street the defendant said to the assembled crowd that he still believed that she was the one who had been robbing and stealing up and down Bell street.

Under the first assignment of error the appellant Travis insists on two propositions, first, that the plaintiff was not entitled to recover under the first count of the declaration for false imprisonment, because a felony had been committed and that defendant had reasonable grounds to believe the plaintiff guilty; and second, that the plaintiff was not entitled to recover under the second count of the declaration because the slanderous words were spoken during the investigation of a crime and were therefore privileged.

We do not think that this assignment should be sustained. The defendant does not seem to have relied on this defense in the trial court. He testified that he had told the policeman that he could not identify the woman who had been burglarizing on Bell street because he had never seen her, and that while they were discussing the matter the plaintiff went down the street and the policeman suggested that she suited the description, and went immediately to detain the plaintiff and requested the defendant to go and help identify her, that the policeman arrested her and the defendant took no part in the arrest, did not touch the plaintiff, and said nothing to the assembled crowd, and that the policeman did all the talking; that after the arrest the policeman requested the plaintiff to pull off her hat and requested the defendant to take a look at her and inquired whether she was the party, to which the defendant replied, "no, she is not the party," and thereupon the plaintiff was released. The defendant denies that he made any derogatory statements to the crowd about the plaintiff, denies that he took part in the arrest, or took hold of her arm. The jury evidently believed plaintiff's statement. Hence, it will be seen that his defense below was that he took no part in her arrest and did not utter the words of and concerning her, as alleged in the declaration. Now he has entirely changed his theory of defense on appeal.

While the defenses of privileged communication and of justifiable arrest may be made under the general issue, yet we do think it doubtful whether it goes to the extent that where one relies on an absolute denial in the lower court, he can then, on appeal, change his theory of defense to that of justification. See Railroad v. Sharp, 141 Tenn., 146, 207 S. W., 728. We think the situation in this case is different

from that of the case of Southern Ice Company v. Black, 136 Tenn., 391, 401; 189 S. W., 861; Ann. Cas. 1917 E, 695, as no motion for peremptory instructions was made on this count of the declaration.

The defense of probable cause for false arrest must be made in good faith. It is obvious that what constitutes reasonable grounds of suspicion must depend upon the facts and circumstances of the particular case; but those facts and circumstances should be such as would justify a careful and prudent person, acting circumspectly in his belief. It is the duty of the person making an arrest to take precaution against arresting an innocent person, and this requires the making of such investigation as the circumstances permit. The circumstances under which he must act should be such as any reasonable person acting without passion or prejudice, would have fairly suspected that the plaintiff committed the crime or was implicated in it. See 25 C. J., 469-471.

The defense of privileged communication must be made in good faith in the prosecution of an inquiry regarding a crime which has been committed, and for the purpose of detecting and bringing to punishment the criminal. "The law requires such charges to be made in the honest desire to promote the ends of justice, and not with spite or malicious feeling against the person accused, nor with the purpose of obtaining any indirect advantage to the accuser. Nor should serious accusations be made recklessly or wantonly; they should always be warranted by some circumstances reasonably arousing suspicion, and they should not be made unnecessarily to persons unconcerned, nor before more persons, nor in stronger language than necessary." See Newell on Slander and Libel, pages 442, 446; 36 C. J., 1248, 1265; Price v. Sale, 8 Hig., 382.

We do not see how the defendant can now rely in good faith on these defenses on appeal when he denied that he participated in the arrest and also emphatically denied that he uttered the words about the plaintiff alleged. But several witnesses testified that he rushed up and took the plaintiff by the arm and made the statement to her, alleged in the declaration, and repeated it several times to the crowd that she was a thief and had been burglarizing and robbing houses up and down Bell street, and they say that after he had released the plaintiff and she had gone off down the street he repeated the statement to the assembled crowd and said that he still believed that she was the guilty party. The jury evidently believed this testimony; hence we do not think that the defenses of privileged communication and probable cause for the arrest are made in good faith and for the purpose of prosecuting crime. This assignment must be overruled.

The second, third, fourth and fifth assignments of error go to that portion of the court's charge which was in substance that if the defendant had unlawfully and without legal authority arrested and

detained the plaintiff on a false charge, or if the defendant had uttered the words set out in the declaration, about the plaintiff, which words were actionable per se, if false, he was liable. It is insisted that the charge in this respect was erroneous because the words were spoken during the investigation of the crime and were privileged, and that the defendant had a right to arrest and detain the plaintiff, as he had reasonable grounds to believe that she had committed the crime, irrespective of her guilt or innocence.

We do not think that these assignments are well made for the reasons set out under the first assignment of error. The charge in this respect is a clear statement of the law as laid down by our Supreme Court. It has been repeatedly held in this State that false charge of a crime involving moral turpitude is slanderous per se, and that damages are presumed to accrue as a matter of law. See Williams v. Karnes, 4 Humph., 10; Huckaby v. Winchester, 7 Hig., 68; Fry v. McCord, 95 Tenn., 685, 33 S. W., 568.

Should the defendant have desired further instructions on qualified privilege, it was his duty to have requested more specific instructions, which he did not do. The instructions were correct as far as they went. A meager and incomplete charge, if not misleading, is not reversible error. See Cumberland Telephone Co. v. Poston, 94 Tenn., 696, 30 S. W., 1040; Shelby County v. D. A. Fisher, 137 Tenn., 507, 194 S. W., 576.

The contention that the charge of the court as to the slanderous words uttered were not the same as those proven, is without merit. The words set out in the declaration were "You know where you have been and what you have done. You know you have been robbing and stealing all up and down Bell street." The plaintiff testified that the defendant said, "You know what you have been doing, you know you have been robbing and stealing all up and down Bell street and that you were robbing and stealing in my house." The slanderous words which are the basis of the action, are, "You known you have been robbing and stealing all up and down Bell street." We therefore see that the slanderous words, the basis of the action, are verbatim those in the declaration, the charge and the proof, and the rest of the sentence is in substance the same, hence there is nothing in this proposition.

"It is not necessary to prove the exact and precise words laid in the declaration, it is sufficient to prove the principal and substantive words made importing the slanderous charge." See Hancock v. Stephens, 11 Humph., 508; Pursell v. Archer, 7 Tenn., 317; Cohen v. Pinson, 1 Hig., 108.

On the question of false imprisonment, "Where one stops another on the public road and by means of threats, or otherwise stops him, and in consequence of such conduct, the plaintiff is stopped and not

permitted to pass along, as he had a right to do, this constituted an illegal imprisonment." .See Bloomer v. State, 3 Sneed, 66, Newell on Malicious Prosecution and False Imprisonment, page 231, sec. 107; Herzogg v. Graham, 9 Lea, 152; 25 C. J., 452.

Hence we think there is nothing in these assignments of error and that they should be overruled. - .

The sixth assignment of error is that the court erred in overruling defendant's motion for a directed verdict on the false imprisonment count of the declaration, should be overruled for the reasons hereinabove given, as there was proof that the defendant did not exercise reasonable diligence in making proper inquiry and investigation of the facts before making the arrest. In an action for false imprisonment or malicious prosecution the verdict should be directed for the defendant only when it appears from undisputed evidence, that, before procuring the arrest and prosecution of plaintiff, the defendant endeavored, by the exercise of reasonable diligence, to make such inquiry and investigation of the facts touching the probable guilt of the plaintiff as an ordinarily prudent person would have made under the same circumstances. See Citty v. Miller, 1 Tenn. App., 1. We think that there was abundant proof that the defendant did not exercise reasonable diligence to make inquiry and investigation of the facts before making the arrest, and this assignment should be overruled.

The seventh assignment as to the excessiveness of the verdict should be overruled on the facts hereinabove detailed. We do not think that the verdict is excessive.

The eighth assignment as to newly-discovered evidence has given us much more concern. The defendant has filed the affidavits of three new witnesses who claim to have seen the incident when plaintiff was arrested. The denial of a motion for a new trial on account of newly-discovered evidence will not be disturbed on appeal, unless there has been an abuse of the discretion by the trial judge. See Moore v. State, 96 Tenn., 209, 33 S. W., 1046. Newly-discovered evidence must be of such character as to convince the court that an injustice has been done and that a new trial will change the result. See Tabler v. Connor, 1 Bax.,'195; Demonbreun v. Walker, 4 Bax., 199; Shárp v. Treece, 1 Heisk., 447.

Upon examination of these affidavits it will be seen that the persons giving the affidavits were not present during the whole time of that alleged arrest and evidently saw only portions of it. Some of these affidavits contradict the testimony of the defendant and the policeman in some particulars, for example, the defendant and the policeman testified that there were only one or two people present, while these affidavits state that there was a large crowd. The three affidavits, in the main, corroborate the defendant and his witnesses, and

are therefore cumulative. "If the newly-discovered evidence consist merely of additional facts and circumstances, going to establish the same points which were particularly controverted before, or of additional witnesses to the same facts and circumstances, such circumstances are cumulative, and a new trial will not be granted. See Tabler v. Connor, supra.

"Cumulative evidence is that which speaks of facts in relation to which there was evidence on the trial. In such cases, a new trial will not be granted." Noel v. McCrory, 47 Tenn., 629; McGavock v. Brown, 4 Humph., 251.

The defendant's affidavit does not state any facts showing due diligence on his part. He merely stated that he had made diligent search and inquiry before the trial for witnesses. This is not sufficient. His affidavit must show reasonable diligence, that is, ordinary diligence to obtain the evidence before the trial. A mere statement of due diligence is not sufficient, but the facts constituting diligence must appear, and the facts must be specifically set out. Mere general statement that affiant inquired among persons likely to know, is not sufficient, the particulars must be shown. See Ross v. State, 130 Tenn., 392, 170 S. W., 1026.

The defendant filed a counter-affidavit of the witness Drifoos, which was proper. See Moore v. State, supra. In this affidavit the witness corroborates the plaintiff.

It is obvious therefore, that there is no merit in this assignment of error, because, first, said alleged newly-discovered evidence was merely cumulative; second, because even if it had been newly-discovered evidence, there is not a sufficient showing on the part of the defendant of due diligence on his part to have ascertained and produced this evidence during the trial; and third, this alleged new evidence is denied by the counter-affidavit of Drifoos; so we do not think that the trial judge abused his discretion in overruling the motion for a new trial, hence this assignment of error must be overruled. The authorities on newly-discovered evidence are reviewed in 20 R. C. L., 290; 20 Stand. Ency. Proc., 549; 9 Michie's Tenn. Ency. Dig., 455.

The ninth assignment of error complains at the court's charge on the question of damages. The first is that the court invaded the province of the jury in assuming that slanderous words were spoken by the defendant to the plaintiff. In doing this the appellant has isolated a portion of the sentence. By reading the connecting paragraph of the charge it will be seen that the trial judge did not assume any slanderous words were spoken, but left the matter clearly to the jury. He stated to the jury that if the defendant did not use the language toward the plaintiff as charged, then it should find in favor of the defendant. Hence there is nothing in this contention.

The second complaint is that the plaintiff had sued ·for only $10,000, but had laid the damages at $10,000 in each count of the declaration, and the jury was permitted or instructed to assess damages in the aggregate under both counts, and it could have returned a verdict for any sum not exceeding $20,000. We do not think there is anything in this contention, and this assignment of error must be overruled. Morison's Tenn. Pleading and Forms, 160.

It results that all the assignments of error are overruled and the judgment of the lower court must be affirmed. A judgment will be entered in this court for $2000, with interest from October 20, 1926, together with the cost of the cause, in favor of Miss Bacherig against defendant Travis, and a judgment will also be entered against the defendant and the surety on his appeal bond for the cost of the appeal, for all of which execution may issue.

Faw, P. J., and DeWitt, J., concur.