Jim W. WILLIAMS, Plaintiff,

v.

EXPRESS AIRLINES I, INC., d/b/a Northwest Airlink, Northwest Airlines, Inc., and Memphis–Shelby County Airport Authority, Defendants.

No. 90–2173–4/B.

United States District Court, W.D. Tennessee, W.D.

April 9, 1993.

Carl H. Langschmidt, Jr., Cannon F. Allen, Armstrong Allen Prewitt Gentry Johnston & Holmes, Memphis, TN, Douglas L. Parker, Institute for Public Representation, Washington, DC, for Jim W. Williams.

Louis F. Allen, Waring Cox, Memphis, TN, Fred C. Begy, III, Adler Kaplan & Begy, Chicago, IL, for Express Airlines I, Inc.

George S. Petkoff, Petkoff & Lancaster, Memphis, TN, Mark A. Dombroff, Katten Muchin Zavis & Dombroff, Washington, DC, for Northwest Airlines.

James D. Pugh, Law Offices of James D. Pugh, Memphis, TN, for Memphis–Shelby County Airport Authority.

ORDER GRANTING MOTIONS FOR PARTIAL SUMMARY JUDGMENT BY EXPRESS AIRLINES I, INC. AND NORTHWEST AIRLINES, INC. ON FALSE IMPRISONMENT CLAIMS

McRAE, Senior District Judge.

Motions for partial summary judgment filed separately by Express Airlines I, Inc. ("Express") and Northwest Airlines, Inc. ("Northwest") on pendent false imprison-

ment claims are now before the Court. The Court had stayed rulings pending the filing of supplemental memoranda on the issue of pre-emption under 49 U.S.C.App. § 1305(a)(1) in light of the Supreme Court's decision in *Morales v. Trans World Airlines, Inc.*, — U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). December 17 Order, 39–40. The parties have filed their memoranda.

Plaintiff alleges that he was falsely imprisoned by Express when he was stopped from boarding Express Flight 2463, on which he had a reserved seat. He asserts a separate claim of false imprisonment against Northwest for having strapped him into an immobile aisle chair for over 30 minutes in the Northwest gate area while he waited for his alternative Northwest flight.[1] There is no dispute that while in the aisle chair, plaintiff was in view of, and conversed with, a Northwest gate agent; his upper body was strapped in for his own safety to keep him from falling out; and, he had use of his arms. Exhibits 33 & 35, Northwest's Statement of Material Facts (deposition of plaintiff). Regarding these two incidents, plaintiff also brings separate federal claims for handicapped discrimination under the Air Carrier Access Act ("ACAA"), 49 U.S.C.App. § 1374(c).

This Court had previously ruled, in reference to the false imprisonment claims, that "(p)laintiff's intentional tort claims are not pre-empted by 49 U.S.C. § 1305." January 2, 1991 Order On Defendant's Motion To Dismiss, 6 n. 3. Since that ruling, the Supreme Court addressed § 1305 pre-emption in *Morales*. The new guidance provided in that opinion requires the Court to reconsider the question whether plaintiff's false imprisonment claims are pre-empted.

## DISCUSSION

Express pre-emption was legislated as part of the Airline Deregulation Act of 1978, and is found in the Federal Aviation Act, 49

U.S.C.App. § 1301 *et seq.* It provides in relevant part:

> (N)o State ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier....

49 U.S.C.App. § 1305(a)(1).

*Morales* shed new light on § 1305 pre-emption. The case specifically held that standards for airline fare advertising developed by an association of state attorney generals and enforceable through states' general consumer protection statutes were pre-empted because they "related to" airline rates. In its analysis of the "relating to" language of the statute, the Court adopted the same broad standard as that applied under the pre-emption provision found in the Employee Retirement Income Security Act of 1974 (ERISA). Therefore, "relating to" under § 1305(a)(1) means that state laws, as enforced, which have "a connection with or reference to airline "rates, routes, or services" are pre-empted under 49 U.S.C.App. § 1305(a)(1)." *Morales*, — U.S. at ——, 112 S.Ct. at 2037.

Continuing to cite ERISA pre-emption, the *Morales* Court rejected the argument that pre-emption applies only to laws specifically addressing the airline industry, but not laws of general applicability:

> Besides creating an utterly irrational loophole (there is little reason why state impairment of the federal scheme should be deemed acceptable so long as it is effected by the particularized application of a generalized statute), this notion similarly ignores the sweep of the "relating to" language.

*Morales*, — U.S. at ——, 112 S.Ct. at 2038 (citing, *inter alia*, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987) (pre-emption of common law tort and contract suits under ERISA)).

---

1. Before being placed in the aisle chair, plaintiff had been provided with a temporary wheelchair. Plaintiff has testified that he very reluctantly gave up the wheelchair because it was needed elsewhere in the airport, but only after insistent requests to do so and a belief that his own wheelchair might be made available for his use.

This ruling leaves little doubt that a claim based on common law tort or contract is as subject to § 1305 pre-emption as any other claim, if it can be demonstrated that it "relates to" airline "rates, routes, or services."

Some claims may not be pre-empted, however. " '(S)ome state actions may affect [airline "rates, routes or services"] in too tenuous, remote or peripheral a manner' to have pre-emptive effect." *Morales*, —— U.S. at ——, 112 S.Ct. at 2040 (quoting *Shaw v. Delta*, 463 U.S. 85, 100, n. 21, 103 S.Ct. 2890, 2901, n. 21, 77 L.Ed.2d 490 (1983) (ERISA preemption)). The *Morales* Court did not consider the issue before it to be a "borderline" question, however, thus it declined comment on where it would be appropriate to draw the line.

Plaintiff relies on a recent post-*Morales* case from this Circuit, *Margolis v. United Airlines, Inc.*, 811 F.Supp. 318 (E.D.Mich., 1993). In *Margolis*, plaintiff sued for negligence, alleging that a luggage carrier fell from an aircraft's overhead bin and struck plaintiff on the head. After an examination of the legislative history of the ADA and cases pre-dating *Morales*, *Margolis* concluded that negligence claims for personal injury, and apparently personal injury cases generally, were not intended to be pre-empted. *Margolis*, 811 F.Supp. at 320–21. In this, the Court believes *Margolis* went too far, "ignoring the "sweep of the "relating to" language." There is no foundation in *Morales* for giving personal injury claims a blanket exemption from pre-emption. The proper test to avoid pre-emption is whether the claim's effect is "too tenuous, remote or peripheral". The Court need not inquire into whether the claims in *Margolis* were so tangential as to have avoided pre-emption anyway under the proper test. The facts of the present case are easily distinguishable.

■ Plaintiff's false imprisonment claim against Express is based upon the theory that Express's conduct in stopping plaintiff at its gate from boarding and flying upon its aircraft restrained plaintiff's free forward movement to go where he had the right to go without just cause. *See*, *Smith v. State*, 26 Tenn. 43 (1846); *Travis v. Bacherig*, 7 Tenn. App. 638 (1928). Unquestionably, the object of plaintiff's movement—to fly upon Flight 2463—was an "airline service." Clearly then, his claim of having been wrongfully restrained has a close "connection with" an airline service. The necessary result is preemption. *See*, *Von Anhalt v. Delta Air Lines, Inc.*, 735 F.Supp. 1030 (S.D.Fla.1990) (pre-emption of claims for negligence, defamation, assault and battery arising from boisterous plaintiff's ejectment from aircraft); *see also*, *Cannava v. U.S. Air, Inc.*, Av.Liti.Rep. (Andrews) para. 18021 (D.Mass. January 7, 1993; No. 91–30003–F) (Ex. A, Express's Additional Supp. Memo.)

■ The same must be said for the false imprisonment claim against Northwest. Plaintiff's claim that his confinement in the aisle chair constituted false imprisonment is based upon the same underlying facts as his federal discrimination claim: that Northwest failed to adequately provide wheelchair or other mobility assistance to him in its gate area. The Court finds that the aisle chair-false imprisonment claim logically "relates to" an airline service—the provision of mobility assistance to its handicapped passengers—and also has, at the least, a "connection with" air transportation. Moreover, the Court has earlier ruled in this case that an airline's conduct toward handicapped passengers who are awaiting flights on the ground falls squarely within the purview of federal law, namely the ACAA's regulation of "the provision of air transportation" to handicapped persons. 49 U.S.C.App. § 1374(c); December 17 Order, 13–14. The conduct complained of in both the false imprisonment and ACAA discrimination claims is essentially the same. Thus, to allow the state false imprisonment claim would encroach upon a field of federally regulated activity. Consequently, plaintiff's false imprisonment action against Northwest is pre-empted.

Furthermore, the state law claims at issue here do not affect airline services in too "tenuous, remote or peripheral a manner" to avoid pre-emption. Rather, by their very nature they affect airline services *directly*, because they immediately arise from the denial, or allegedly inadequate provision of, such services.

Because the pre-emption issue is dispositive of these claims, it is not strictly necessary to address the issue whether genuine

questions of fact exist under Tennessee false imprisonment law to submit the claims to the jury. Because of the developing nature of the law in the pre-emption area, however, the Court will state its opinion for the record.

False imprisonment is the intentional restraint or detention of another against his will without just cause. *Brown v. SCOA Industries, Inc.,* 741 S.W.2d 916, 919–920 (Tenn.App.1987). Actual force is not necessary to constitute a false imprisonment; under some circumstances it may be enough that a man is restrained of his personal liberty by fear of a personal difficulty. *See, Smith v. State,* 26 Tenn. 43 (1846); *see also, Travis v. Bacherig,* 7 Tenn.App. 638 (1928).

■ Were it not for pre-emption, questions of fact would probably exist to preclude summary judgment. Regarding the claim against Express, although its agent did not use actual or threatened force against plaintiff, there is still evidence that plaintiff's personal liberty was restrained. Express stopped him at the gate, denied him the right to board despite his reservation, and let the plane take off without him. Plaintiff was in a wheelchair. It can be inferred that any attempt by plaintiff to move toward boarding despite the agent's opposition could only have been done with great personal difficulty. There is also sufficient evidence of total restraint of plaintiff, in the sense of denying him the ability to "pass along" in one direction, to satisfy the restraint element. *Travis* at 644–5. The Court believes the issue of whether Express had "just cause" to deny plaintiff the right to board was dependent upon a trial on the issue whether Express had valid safety reasons, or whether it unlawfully discriminated against plaintiff.

■ As for the claim against Northwest, a factual question existed whether plaintiff gave up his wheelchair of his own free will and freely consented to the aisle chair arrangement.

Despite the pre-emption of the state actions, however, these same incidents form the basis of viable claims against Express and Northwest under the ACAA's anti-discrimination provision.

For reasons of federal pre-emption, therefore, the separate motions for partial summary judgment brought by Express and Northwest on the respective false imprison-ment claims against them are hereby **GRANTED.**

**IT IS SO ORDERED.**