**Daniel FARASH, Plaintiff,**

v.

**CONTINENTAL AIRLINES, INC., Defendant.**

**No. 07 Civ. 590(RJS).**

United States District Court, S.D. New York.

May 23, 2008.

Daniel Farash, pro se.

Christopher D. Thomas, Esq., Nixon Peabody LLP, Rochester, NY, for Defendant.

MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge.

Plaintiff Daniel Farash, proceeding *pro se*, brings this action against defendant Continental Airlines, Inc. ("Continental"), for damages allegedly incurred when he was asked to move from one first-class passenger seat to another first-class passenger seat to accommodate a father traveling with his pre-teen son on a flight from Miami, Florida, to Newark, New Jersey. Plaintiff brings claims of negligence, civil assault, and gross negligence, and seeks thirty-five million dollars in both compensatory and punitive damages.

Continental has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff's claims are preempted by the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b)(1), and that, in any event, plaintiff has failed to state a claim for relief.

For the following reasons, defendant's motion is granted.

## I. BACKGROUND

### A. Facts

On a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 77 (2d Cir.2007). The following recitation of facts is, accordingly, derived entirely from the factual allegations in the Complaint.

On January 5, 2006, plaintiff boarded Continental Airlines Flight 539, departing from Miami, Florida, and arriving in Newark, New Jersey. He had a first-class ticket, redeemed with frequent flyer miles, and was assigned to an aisle seat. Much to his "delight," he saw that his seat was in the bulkhead, and that the adjacent window seat was vacant. (Compl.¶ 10.) Moments before the aircraft disembarked from the gate, the flight attendant, "Jane Doe," "demanded" that plaintiff vacate that seat and take a window seat, also in first class. (*Id.* ¶ 11.) Plaintiff responded that he wanted an aisle seat, explaining to Jane Doe that he suffered from psychological disorders that necessitated that he sit in an aisle seat. Jane Doe ignored plaintiff's objections and in a hostile tone, treating plaintiff "as a farm animal or illegal trespasser," told him that the seats were needed to accommodate a father traveling with his child. (*Id.* ¶ 19.) Plaintiff then gathered his belongings and moved to another seat in first class—"a 'bastardized,' claustrophobic window seat that did not recline nor have proper leg room," causing him to feel "swindled, cheated, and disgusted." (*Id.* ¶ 16.) He found the new seat to be "qualitatively inferior to most other seats on the entire plane." (*Id.* ¶ 17.) Plaintiff's trip was allegedly made more uncomfortable because Jane Doe personally harassed him and gave him inferior service, while the "passengers in the bulkhead were being treated as royalty." (*Id.* ¶ 20.) He felt that he was "profiled and the subject of discrimination for being a single male, having Semitic looks and a middle eastern last name." (*Id.* ¶ 19.)

At some point during the flight, plaintiff went to the lavatory. He saw that his original seat was now being occupied by a

sleeping adult, rather than a child. Upon exiting the lavatory, "in a vindictive and appalling act of provocation, Jane Doe had extended her legs out into the aisle completely blocking plaintiffs passage." (*Id.* ¶ 23.) Plaintiff, fearful of confronting Jane Doe, "was reduced to scaling the wall to avoid conflict" with her. (*Id.* ¶ 25.) Plaintiff returned to his seat and summoned Jane Doe through the overhead courtesy button. When Jane Doe appeared, plaintiff asked why he had been transferred from his original seat, given that no child was actually sitting in the bulkhead. Jane Doe "angrily shouted" that the "child is back in coach" and then "stormed away." (*Id.* ¶ 28.) Nevertheless, Jane Doe asked the adult to leave first class and had the child move from coach into the first class seat. (*Id.* ¶ 29.)

Plaintiff alleges that after moving into his new seat, he learned that the person seated next to him was a federal Air Marshal. Shortly after plaintiff asked Jane Doe why he had been transferred from his seat, Jane Doe summoned the Air Marshal to the front of the cabin. She motioned towards plaintiff while speaking to the Air Marshal, who then made eye contact with plaintiff for "several seconds." (*Id.* ¶ 33.) Upon returning to his seat, the Air Marshal took out a " 'black book' and searched through it." (*Id.* ¶ 35.) Plaintiff alleges that these interactions with the Air Marshal "terrified, traumatized, and overwhelmed" him (*Id.* ¶ 36); that he had to use "all his self-control to maintain his composure to avoid a panic or anxiety attack, as he was now certain that Jane Doe would go to any extreme to abuse plaintiff" (*Id.* ¶ 33); and that he was "very anxious" that the Air Marshal would ground the plane and that he would be arrested and subjected to national news media attention (*Id.* ¶ 38).

When the flight landed in Newark, plaintiff was ordered to exit the plane in front of the Air Marshal. Another flight attendant apologized to him for Jane Doe's actions. (*Id.* ¶¶ 40–42.)

The next day, plaintiff began to call Continental Airlines to report the incident. After several weeks of calls and several subsequent months of silence, Continental informed him that after a full investigation, plaintiff's complaint was validated and that Jane Doe had broken company policy. Continental refused to state whether Jane Doe was disciplined. (*Id.* ¶ 44.)

Plaintiff was eventually put in contact with Allen Babbs, a Continental employee, who was "rude, insulting, unsympathetic, insensitive, and devious, treating customers as if they were on trial." (*Id.* ¶ 45.) After an interview, Mr. Babbs sent a letter to plaintiff stating that Continental assumed no responsibility for this matter. (*Id.* ¶ 47.)

As a result of his treatment on the flight, plaintiff claims that he has experienced emotional distress, insomnia, illness, a "breakdown," and a reoccurrence of post-traumatic stress disorder. (*Id.* ¶ 49.) He alleges that as a result of Jane Doe's actions, he is unable to concentrate and work effectively, resulting in monetary losses of hundreds of thousands of dollars. He claims that he now requires "various and copious amounts of psycho-pharmaceutical medications" and has developed hypertension, mood swings, and phobias. (*Id.* ¶ 52.)

## B. Procedural History

Plaintiff filed his complaint in New York state court on December 28, 2006, alleging claims for negligence, gross negligence, and civil assault, and seeking punitive damages. On January 27, 2007, Continental removed the complaint from state court to federal court. Originally assigned to the Honorable Richard M. Berman, District Judge, the case was reassigned to the Honorable Kenneth M. Karas, District

Judge, on February 5, 2007. A pre-motion conference was held before Judge Karas on May 10, 2007; Continental filed its motion to dismiss shortly thereafter. Plaintiff filed an affidavit in opposition to the motion. After the motion was fully briefed, the case was reassigned to the undersigned on September 4, 2007.

## II. DISCUSSION

### A. Standard of Review

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the non-moving party. *See State Employees Bargaining Agent Coalition, 494 F.3d at 77; Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006); *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 161 (2d Cir.2000). However, while "the well-pleaded material allegations of the complaint are taken as admitted[,] ... conclusions of law or unwarranted deductions of fact are not." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994) (quoting 2A James Wm. Moore *et al.,* Moore's Federal Practice P12.08 (2d ed.1984)).

To survive dismissal, the plaintiff must satisfy a "flexible 'plausibility standard.'" *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007). In effect, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* ―― U.S. ――, ――, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)); *see also Camarillo v. Carrols Corp.,* 518 F.3d 153, 156 (2d Cir. 2008) (per curiam); *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007) ("The plaintiff's factual allegations must be enough to give the defendant fair notice of what the claim is and the grounds upon which it rests.").

The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.,* 127 S.Ct at 1974.

 Moreover, because plaintiff is appearing *pro se,* the Court is obligated to "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel,* 287 F.3d at 146 (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)); *see also Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007) ("The policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'") (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)).

### B. Preemption Under the Airline Deregulation Act of 1978

Continental argues that all of plaintiff's claims are preempted by the Airline Deregulation Act of 1978. Congress enacted the ADA in 1978 in order to loosen the economic regulation of the airline industry after determining that "'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality ... of air transportation.'" *Morales v. TWA,* 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (alteration and omission in original) (quoting 49 U.S.C. app. § 1302(a)(4), (9) (1988)). To that effect, the ADA placed "exclusive legislative and regulatory authority in the aviation context in the hands of the federal government." *Weiss v. El Al Isr. Airlines, Ltd.,* 433 F.Supp.2d 361, 369 (S.D.N.Y.2006). The current version of the ADA's preemption

provision provides that "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b).

The Supreme Court has interpreted the ADA as preempting state action "having a connection with, or reference to, airline rates, routes, or services." *Morales v. TWA*, 504 U.S. at 384, 112 S.Ct. 2031 (internal quotation marks omitted). In a subsequent decision, *American Airlines Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1994), the Supreme Court clarified that the ADA's preemption clause is applicable to state tort law suits.[1] *See also Weiss*, 433 F.Supp.2d at 369–70 (discussing *American Airlines*). Courts have repeatedly—and recently—emphasized the breadth of the ADA's preemption provision. *See American Airlines, Inc.*, 513 U.S. at 225–26, 115 S.Ct. 817; *Morales*, 504 U.S. at 383–84, 112 S.Ct. 2031; *see also Rowe v. N.H. Motor Transp. Ass'n*, —— U.S. ——, ——, 128 S.Ct. 989, 998, 169 L.Ed.2d 933 (2008) (Ginsburg, J., concurring); *Air Transp. Ass'n of Am. v. Cuomo*, 520 F.3d 218, 222 (2d Cir.2008) (per curiam).

The Supreme Court, nevertheless, also has limited the ADA's preemptive reach. *See Morales*, 504 U.S. at 390, 112 S.Ct. 2031 (" '[S]ome state actions may affect [airline rates, routes or services] in too tenuous, remote or peripheral a manner' to have a pre-emptive effect.") (quoting *Shaw v. Delta Air Lines. Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). "Neither the Supreme Court nor the Second Circuit has offered a *per se* rule with regard to the ADA's preemption of tort

claims." *In re Nig. Charter Flights Contract Litig.*, 520 F.Supp.2d 447, 469 (E.D.N.Y.2007) (citing *Abdu–Brisson v. Delta Airlines, Inc.*, 128 F.3d 77, 81 (2d Cir.1997) ("The Supreme Court has not drawn any distinct preemption lines for guidance, and that may not be possible.")). Rather, the Second Circuit has explained that the ADA's preemption provision must be applied "on a case-by-case basis," and that state and local laws must "directly affect prices, routes or services" to be preempted. *Abdu–Brisson*, 128 F.3d at 86.

In the instant case, plaintiff brings three causes of action for negligence, civil assault, and gross negligence. All three of these claims sound in tort. Continental thus argues that the entire complaint is preempted by the ADA and must be dismissed. (*See* Def.'s Mem. at 6.)

### 1. The Preemption Inquiry Is Appropriate on a Motion to Dismiss

In opposition to the motion to dismiss, plaintiff has submitted an affidavit that argues that Continental is attempting to use this case to expand the scope of ADA preemption. (*See* Pl.'s Aff. at 1.) He contends that preemption analysis has only been previously applied on a motion for summary judgment, and that it is inappropriate to apply preemption analysis on a motion to dismiss pursuant to Rule 12(b)(6). (*Id.* at 1, 5.) Specifically, plaintiff alleges that more evidence is needed before the Court can determine if his rights were, in fact, violated. (*Id.* at 3–4.)

While the Court liberally construes *pro se* submissions to raise the strongest arguments that they suggest, *see Weixel*, 287 F.3d at 146, plaintiffs arguments nevertheless fail. "The determina-

---

**1.** The ADA does not preempt suits brought under state contract law. *See Am. Airlines,* 513 U.S. at 228–29, 115 S.Ct. 817; *Weiss,* 433 F.Supp.2d at 369–70.

tion of reasonableness for [ADA preemption] purposes is a question of law either where no dispute exists as to the extent of the conduct, or where a court accepts plaintiffs version of the conduct." *Rombom v. United Air Lines, Inc.,* 867 F.Supp. 214, 222 (S.D.N.Y.1994). In keeping with this holding, district courts in this circuit have applied preemption analysis under the ADA in the context of motions to dismiss. *See, e.g., Weiss,* 433 F.Supp.2d at 361 (granting motion to dismiss tort claims on preemption grounds); *In re Jetblue Airways Corp. Privacy Litig.,* 379 F.Supp.2d 299, 316 (E.D.N.Y.2005) (granting motion to dismiss tort claims on preemption grounds); *Glavey v. Aer Lingus,* No. 98 Civ. 7003(LAP), 1999 WL 493350, at *1, 1999 U.S. Dist. LEXIS 10498 (S.D.N.Y. July 12, 1999) (applying *Rombom* analysis on motion to dismiss but denying motion); *see also Peterson,* 970 F.Supp. at 246 (applying *Rombom* analysis on motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3)). As this Court accepts plaintiff's version of the conduct (as it must in a motion filed pursuant to Rule 12(b) (6)), the question of preemption is a matter of law and a motion to dismiss is appropriate at this time.

### 2. The *Rombom* Test

To assess whether a tort claim should be preempted, courts in the Southern District have generally applied the three-part test articulated in *Rombom v. United Air Lines, Inc.,* 867 F.Supp. 214 (S.D.N.Y. 1994) (Sotomayor, J.) and reiterated in *Ruta v. Delta Airlines, Inc.,* 322 F.Supp.2d 391, 398 (S.D.N.Y.2004). *But see Weiss,* 433 F.Supp.2d at 370 (dismissing tort claims without applying the three-part *Rombom* test because tort claims were "clearly preempted by the ADA").[2]

■ Under the *Rombom* test, the Court must first determine whether the activity at issue in the claim is an airline service. *See Rombom,* 867 F.Supp. at 221–22. If it is a service, then the Court must decide whether the claim affects the airline service directly or tenuously, remotely or peripherally. *Id.* Finally, the Court must decide whether the underlying tortious conduct was reasonably necessary to the provision of the service. *Id.* If the tortious act did not occur during the service, or did not further the provision of the service in a reasonable manner, then the state tort claim should continue. *Id.*

The first prong of the *Rombom* test requires the court to determine whether the activity at issue is an airline service. Neither the Supreme Court nor the Second Circuit has defined the term "service." Nevertheless, "[a] majority of the circuits to have construed 'service' have held that the term refers to the provision or anticipated provision of labor from the airline to its passengers and encompasses matters such as boarding procedures, baggage handling, and food and drink—matters incidental to and distinct from the actual transportation of passengers." *Air*

---

**2.** In *Trinidad v. American Airlines, Inc.,* 932 F.Supp. 521, 526 (S.D.N.Y.1996), Judge Scheindlin developed an alternative approach in determining whether the action at issue should be preempted. In that decision, she held that airline "services" are defined by the extent to which actions are commonplace and ordinary, and relate directly to air travel, but declined to preempt claims that arose from services performed in a negligent manner. Because both parties agree that the *Rombom* test should govern the preemption claims (*see* Def.'s Mem. of Law at 6; Pl.'s Aff. at 4–5), this Court will apply the *Rombom* test. Nevertheless, the Court does not find that the application of the *Trinidad* test would change the outcome of this decision; under that test, the alleged actions are airline services, and plaintiff has failed to state a negligence, civil assault, or gross negligence claim as a matter of New York tort law.

*Transp. Ass'n of Am.*, 520 F.3d at 223 (collecting cases). While the Second Circuit has not itself defined the term, it has held, in *Air Transport Association of America v. Cuomo*, that "requiring airlines to provide food, water, electricity, and restrooms to passengers during lengthy ground delays does relate to the service of an air carrier and therefore falls within the express terms of the ADA's preemption provision." *Id.* at 224.

The second prong of the test requires the court to examine whether the claim affects the airline service "directly or tenuously, remotely, or peripherally." *Rombom*, 867 F.Supp. at 222. Where a "specific state tort claim has only an incidental effect on a service, there is no preemption and the state tort action should continue." *Id.* at 222. For example, claims stemming from an airline's refusal to allow passengers to board directly implicate airline services because they arise from the denial or allegedly inadequate provision of such services. *Id.* By comparison, negligence actions based on the airline's maintenance of the floor outside the gate affect airline services only tenuously or peripherally. *See id.*

Finally, the third prong requires the court to assess whether the underlying tortious conduct is reasonably necessary to the provision of the service. For example, if a flight attendant asked a rambunctious passenger to be quiet, even in a rude way, that action would be reasonably necessary to the provision of a service. *See id.* at 222 (discussing colloquy at oral argument on this hypothetical situation). By contrast, if the flight attendant took out a gun and shot the passenger to obtain quiet, that would clearly be unreasonable and thus, not preempted. *Id.* The determination of reasonableness "is a question of law either where no dispute exists as to the extent of the conduct, or where a court accepts plaintiff's version of the conduct."

*Id.* In the context of a motion to dismiss, of course, the Court accepts the plaintiffs version of the underlying conduct as true.

### a. Claims Based on Plaintiffs Seat Reassignment

■ Plaintiff first alleges that the flight attendant requested that he move to another first-class seat to accommodate a father and son traveling together, and that his new seat was next to a federal Air Marshal. These claims are all related to the flight attendant's efforts to locate appropriate seat assignments and resolve seat conflicts. Such claims are clearly airline services. *See Peterson v. Continental Airlines*, 970 F.Supp. 246, 250 (S.D.N.Y. 1997) (seating passengers and resolving seating conflicts are air carrier services); *see also Am. Airlines*, 513 U.S. at 232–33, 115 S.Ct. 817 (passenger claims relating to "access to flights" relate to "service" under the ADA's preemption provision); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir.1995) (air carrier service includes, *inter alia*, ticketing boarding procedures, baggage handling and provision of food and drink).

This set of claims satisfies the second prong of the *Rombom* analysis because the claim affects the airline service directly, not tenuously, remotely, or peripherally. *See Rombom*, 867 F.Supp. at 222, Because plaintiffs allegations openly attack the manner in which the flight crew provided a service, his claims directly arise from the inadequate provision of a service—namely, boarding and seating. *See Rombom*, 867 F.Supp. at 223 (citing *Williams v. Express Airlines I, Inc.*, 825 F.Supp. 831, 833 (W.D.Tenn.1993) (claims stemming from airline's refusal to allow passenger to board directly implicate airline services because they "immediately arise from the denial, or allegedly inadequate provision of, such services.")).

Turning to the third prong of the *Rombom* analysis, the Court must examine whether the underlying conduct was reasonably necessary to the provision of the service. *See Rombom,* 867 F.Supp. at 222. Plaintiff was asked if he would change seats; he consented to do so. The underlying conduct—here, requesting that a passenger voluntarily change seats within his paid-for cabin of service in order to accommodate a family traveling together, and the reseating of the passenger in a seat that he finds to be inferior—is reasonably necessary to the provision of the airline service of seating and reseating passengers.

In his complaint, however, plaintiff states that he felt that his reseating was the result of being "profiled and the subject of discrimination for being a single male, having Semitic looks and a middle eastern last name." (Compl.¶ 19.) Because the Court is obliged to liberally construes *pro se* submissions "to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), this allegation can be construed as an argument that the flight attendant's motive in reseating plaintiff was discriminatory. A discriminatory reseating is not reasonably necessary to the provision of an airline service; indeed, federal law prohibits air carriers from discriminating on the basis of national origin and sex. *See, e.g.,* 49 U.S.C. § 40127(a) ("An air carrier ... may not subject a person in air transportation to discrimination on the basis of race, color, national origin, religion, sex, or ancestry.").

Accordingly, plaintiff's claims based on his allegedly discriminatory seat reassignment are not preempted under the ADA.

b. Claims Based on Interactions With The Air Marshal

■ Plaintiff also alleges that the flight attendant had a discussion with the Air Marshal, that she motioned towards plaintiff while involved in this discussion with the Air Marshal, that the Air Marshal "looked directly at the plaintiff, and engaged in several seconds of direct eye contact," (Compl.¶ 33), that the Air Marshal took out a "black book" and searched through it (*Id.* ¶ 35), and that plaintiff was ordered to exit the plane in front of the Air Marshal. (*Id.* ¶ 41.) Courts in this district have routinely held that security-related decisions and actions, including the decision to notify the captain of a potentially dangerous passenger and to have the passenger physically removed, are airline services. *See Ruta,* 322 F.Supp.2d at 400–01; *Rombom,* 867 F.Supp. at 223. Under these principles, the Court finds that the actions of the flight attendant and the Air Marshal, including the discussion of the plaintiff, looking at the plaintiff, searching through a black book, and ordering the plaintiff to deplane in front of an Air Marshal, are airline services for the purposes of the ADA.

The claims involving the Air Marshal also meet the second prong of the *Rombom* analysis because the claims directly affect the airline service. The claims arise directly from the conversations between the flight crew and the Air Marshal.

Turning to the third prong, the Court must determine whether these interactions with law enforcement were reasonably necessary to the provision of the service of in-flight security. Plaintiff claims that the flight attendant's motive was to harm plaintiff, and that the flight attendant acted out of discriminatory intent. Construing the *pro se* plaintiff's submissions to raise the strongest argument that they suggest, as the Court must, see *Burgos,* 14 F.3d at 790, such a claim cannot be preempted. *See Peterson,* 970 F.Supp. at 248 (holding that because plaintiff's claims were based on the notion that airline had abused its authority, interactions were not

directly related to an airline service); *Rombom*, 867 F.Supp. at 224 (holding that decisions to have passenger arrested was not reasonable when plaintiff claimed that she had quietly disembarked and been arrested only after leaving the plane).

Accordingly, plaintiffs claims based on his allegedly malicious and discriminatory reporting to the Air Marshal are not preempted under the ADA.

### c. Claims Based on Quality of In– Flight Services and Flight Attendant Conduct

█ Plaintiff makes numerous allegations about the quality of the service on his flight and the conduct of the flight attendant, including her tone of voice. All of these areas relate to the services provided by an air carrier. *See Galbut v. Am. Airlines, Inc.*, 27 F.Supp.2d 146, 152 (E.D.N.Y.1997) (first-class service on flight is airline service under ADA); *Rombom*, 867 F.Supp. at 223 (even rude communications between flight attendants and customers are services when communications are designed to effect a service, such as seating passengers or making safety announcements). For the same reasons discussed above, these claims also satisfy the second prong of the *Rombom* analysis because they are directly related to an airline service.

In *Rombom*, the district court held that plaintiffs allegations that the crew treated the passengers "like schoolchildren" did not constitute the type of outrageous conduct which would defeat preemption, precisely because the treatment and the communications between the flight crew and the plaintiff were directly linked to a service and were reasonably necessary to the provision of the service. *Rombom*, 867 F.Supp. at 223. The analysis in the instant case is similar to that in *Rombom*. Even crediting plaintiff's allegations, as the Court must, that the flight attendant was rude and yelled at him, treating him

as a "farm animal or illegal trespasser" (Compl.¶ 14), the interactions between the flight attendant and plaintiff were reasonably necessary to the basic airline service of making seating assignments and resolving conflicts. These interactions were reasonably necessary to move plaintiff to a new seat, inform him why he had been moved, or explain why plaintiffs desired seat was now vacant.

Accordingly, the Court holds that the claims based on the quality of in-flight services and the conduct of the flight attendant are preempted under the ADA.

### d. Claims Based on Post–Flight Customer Service

█ Finally, plaintiff asserts claims related to Continental's post-flight customer service. This clearly relates to an airline service. *See In re Jetblue Airways Corp. Privacy Litig.*, 379 F.Supp.2d at 316 (communications between customers and agents is airline service under *Rombom* test). Because plaintiff directly challenges the provision of this airline service, these claims also meet the second prong of the *Rombom* test. Finally, the allegedly tortious conduct was not unreasonable. Plaintiff alleges that while Continental's customer service representative was rude, he did ask many questions and sent plaintiff a letter summarizing the results of the inquiry. (Compl.¶ 47.) Plaintiff's principal objection to the customer service seems to be that Continental Airlines did not give him the result he desired. Neither rudeness nor a refusal to give the customer sought-for relief constitute unreasonableness in the customer service department.

Accordingly, plaintiff's claims based on the post-flight customer service process are preempted under the ADA.

### C. Plaintiff Has Failed to State a Tort Claim

▮ To the extent that this action is not preempted by the Airline Deregulation Act, plaintiff nevertheless has failed to state a cognizable claim under New York law, which constitutes an independent ground for dismissal. Indeed, the Court finds plaintiffs claims to be patently frivolous. Even assuming the facts alleged in the complaint to be true, plaintiff simply cannot sustain his claims for negligence, gross negligence, and civil assault. Put simply, although the conduct of the flight attendant and other personnel alleged in the complaint may have jeopardized the goodwill of a Continental customer, it clearly does not rise to the level of a tort. *See Smith v. Comair, Inc.*, 134 F.3d 254, 259–260 (4th Cir.1998) (holding that to extent that intentional tort allegations were not preempted, they failed to state claim); *cf. Christensen v. Northwest Airlines, Inc.*, 633 F.2d 529, 531 (9th Cir.1980) (holding that rude and discourteous conduct by airline agents was insufficient to support damages in excess of $10,000 and noting that a "federal court should not and cannot adjudicate such a minor claim"); *SZANTO v. British AIRWAYS*, No. 99–CV–1508–J, 2000 WL 34017115, at *3 (S.D.Cal. March 15, 2000) (same).

#### 1. Negligence

▮ Under New York law, which applies to this case, "a plaintiff must establish three elements to prevail on a negligence claim: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.' " *Alfaro v. Wal–Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir.2000) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981)).

The existence of a duty is an essential element of a negligence claim because, "[i]n the absence of a duty, as a matter of law, no liability can ensue." *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir.1997) (internal quotation marks omitted); *see Strauss v. Belle Realty Co.*, 65 N.Y.2d 399, 402, 492 N.Y.S.2d 555, 482 N.E.2d 34 (1985) ("A defendant may be held liable for negligence only when it breaches a duty owed to the plaintiff."). "The question of the existence and scope of an alleged tortfeasor's duty is, 'in the first instance, a legal issue for the court to resolve.' " *Alfaro*, 210 F.3d at 114 (quoting *Waters v. New York City Hous. Auth.*, 69 N.Y.2d 225, 229, 513 N.Y.S.2d 356, 505 N.E.2d 922 (1987) and *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585, 611 N.Y.S.2d 817, 634 N.E.2d 189(1994)).

▮ It is undisputed that Continental owes a duty not only to plaintiff, but to all passengers, to exercise reasonable care for their safety. *See Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 467 (2d Cir.1995); *Plagianos v. Am. Airlines, Inc.*, 912 F.2d 57, 59 (2d Cir.1990). In addition, New York law imposes a duty of reasonable care on Continental, as a common carrier, "to protect its passengers from other travelers." *Pulka v. Edelman*, 40 N.Y.2d 781, 784, 390 N.Y.S.2d 393, 358 N.E.2d 1019 (1976). But "New York law holds a common carrier 'to the same standard of care as any other alleged tortfeasor: It must exercise *ordinary* care commensurate with the existing circumstances.' " *Stagl*, 52 F.3d at 471 n. 5 (quoting *Plagianos v. Am. Airlines, Inc.*, 912 F.2d 57, 59 (2d Cir. 1990) (internal quotations and citations omitted)) (emphasis added).

Thus, although Continental, as a common carrier, owed a duty of care to plaintiff while he was traveling on a Continental flight, this duty was not so broad as to protect plaintiff from the injuries he alleges here. Continental has no duty to provide plaintiff with the stress-free flight

environment he demands, to provide him with a higher standard of accommodations and service because he has a first-class seat, or to provide him with a customer service system that would provide him with his relief of choice. Plaintiffs complaint essentially alleges that Continental owed him a heightened standard of care, rather than a reasonable standard of care. However, there is no legal basis for such an assertion. Accordingly, plaintiffs negligence claim fails as a matter of law. *See, e.g., Gross v. Am. Airlines,* 755 F.Supp. 89, 90 (S.D.N.Y.1991) (declining to impose unreasonable or "silly" duties on American Airlines).

As part of his negligence claim, plaintiff further asserts that Continental's "failure to reasonably hire, train and supervise [Jane Doe] also constitutes negligence." (Compl.¶ 63.) "An employer may be liable for the negligent hiring and retention of an employee when it knew or should have known of the employee's propensity to commit injury." *T.W. v. City of New York,* 286 A.D.2d 243, 729 N.Y.S.2d 96, 98 (1st Dep't 2001) (emphasis added). Since plaintiff has failed to allege negligence on the part of the Jane Doe flight attendant, it necessarily follows that plaintiff has failed to allege any facts from which a viable cause of action for negligent hiring, training, or supervision could be gleaned.

For these reasons, plaintiff's negligence claims must be dismissed.

### 2. Gross Negligence

 To prevail on a claim for gross negligence, plaintiff must establish each of the three previously described elements for negligence, *supra,* plus a fourth element, namely, that defendant's conduct "evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *AT & T v. City of New York,* 83 F.3d 549, 556 (2d Cir.1996) (quoting *Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., Ltd.,* 81 N.Y.2d 821, 823–24, 595

N.Y.S.2d 381, 611 N.E.2d 282 (1993)). Because plaintiff has failed to make out a claim for ordinary negligence, his claim for gross negligence must necessarily fail. Moreover, the allegations set forth in the complaint come nowhere close to establishing the recklessness or intentional wrongdoing required under the fourth element of gross negligence. Clearly, a request to voluntarily move from one first-class seat to another first-class seat does not evince reckless disregard for the rights of others, nor does it smack of wrongdoing. Accordingly, plaintiff's claim for gross negligence must be dismissed.

### 3. Civil Assault

 Finally, plaintiff brings a claim for civil assault. Under New York law, "a civil assault action lies where there is 'an intentional attempt or threat to do [physical] injury or commit a battery,' *Mason v. Cohn,* 108 Misc.2d 674, 438 N.Y.S.2d 462, 464 (1981), thereby placing an individual in reasonable apprehension of bodily harm." *Emanuel v. Barry,* No. CV–83–810, 1990 WL 172681, at *8, 1990 U.S. Dist LEXIS 14727 (E.D.N.Y. Oct. 25, 1990) (citation omitted). Here, plaintiff has failed to allege that the actions of the flight attendant or the Air Marshal placed him in *reasonable* apprehension of bodily harm. At most, plaintiff has alleged that the flight attendant spoke with the Air Marshal and made a gesture towards him, and that the Air Marshal subsequently looked directly at the plaintiff. These gestures are insufficient as a matter of law to make out a claim for civil assault.

 Similarly, plaintiff's allegation that the flight attendant "extended her legs out into the aisle completely blocking plaintiff's passage" from the lavatory (Compl.¶ 23) likewise fails to make out a claim for civil assault. Obviously, interactions such as those described in the complaint are com-

monplace in an airplane setting and, as here, pose no more than a momentary inconvenience. Plaintiff himself concedes that he was not impeded by the flight attendant's conduct (*id.* ¶ 25), and he does not allege any facts to suggest that the complained of conduct constituted an intentional or threatened attempt to do physical injury, much less that it placed him in reasonable apprehension of bodily harm. The Court is aware of no case in which such innocuous conduct has been deemed sufficient to support a claim for civil assault. This is hardly surprising, since to suggest otherwise would render every commercial flight, not to mention every bus, subway, or taxi ride, into an occasion for multiple assaults and assorted torts. Clearly, the law cannot, and should not, be stretched to such absurd results. *See, e.g., Lee v. General Motors Corp.,* 950 F.Supp. 170, 175 (S.D.Miss.1996) ("Not every unfortunate incident that occurs in life, not every discomfort, not every unsatisfactory commercial transaction, not every disagreement among people and/or corporations, gives rise to a cause of action.").

Accordingly, plaintiff's claim of civil assault is dismissed.

### III. Conclusion

For the foregoing reasons, defendants' motion to dismiss the complaint is GRANTED. The Clerk of the Court shall terminate the motion docketed as Document No. 8.

SO ORDERED.